UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOHN MICHAEL BALE,

            Petitioner,

v.

DONALD HOLBROOK,

            Respondent.

CASE NO. 3:17-cv-05188-RBL-JRC

REPORT AND RECOMMENDATION

NOTED FOR: November 24, 2917

The District Court has referred this petition for a writ of habeas corpus to United States Magistrate Judge J. Richard Creatura. The Court's authority for the referral is 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR3 and MJR4. Petitioner filed the petition pursuant to 28 U.S.C. § 2254.

Petitioner John Michael Bale presents 23 grounds for habeas relief. Petitioner has five properly exhausted grounds. Three of the grounds involve whether or not the State produced insufficient evidence to convict him. Petitioner also argues that the Washington Court of Appeals improperly failed to administer a harmless error analysis, and that he suffered

ineffective assistance of appellate counsel. However, petitioner has not shown that the state courts' decisions were contrary to or involved an unreasonably application of clearly established federal law. Therefore, the Court recommends denying petitioner's exhausted habeas grounds on the merits.

The Court further recommends denying as moot one ground for which state court has already granted relief.

Finally, petitioner did not raise his remaining grounds at all levels of state court before presenting them in his habeas petition, leaving them unexhausted. Further, his unexhausted claims are all procedurally defaulted. Therefore, the Court recommends dismissing with prejudice petitioner's unexhausted grounds.

**PETITIONER'S CLAIMS IN THIS HABEAS PETITION**

Petitioner states the following 23 grounds for relief in his petition (Dkt. 4):

1. The Court has jurisdiction to hear his case.
2. The county jail committed misconduct by impeding petitioner's access to the law library.
3. The errors in his case amount to manifest error of Constitutional magnitude.
4. The prosecutor violated due process by filing an amended information while the case was undergoing negotiation.
5. Petitioner's sentence was an unlawful exceptional sentence under Washington sentencing law.
6. Petitioner received ineffective assistance of counsel when trial counsel failed to submit lesser-included offense instructions, when trial counsel failed to assert several objections, and because trial counsel had a conflict of interest with petitioner.
7. The prosecutor engaged in prosecutorial misconduct.

8. During the State's case, State officers committed perjury.

9. The State had insufficient evidence to prove intent to commit first-degree assault.

10. The State presented improper opinion evidence.

11. Petitioner's right to a speedy trial was infringed.

12. Similar to ground 1, petitioner has the right to have this Court review his petition.

13. The Court of Appeals erred by failing to conduct a harmless error analysis when it reversed the firearms conviction.

14. Missing transcripts unlawfully affected petitioner's direct appeal.

15. The State had insufficient evidence to prove that petitioner committed the act of assault.

16. Petitioner received ineffective assistance of trial counsel because his counsel failed to hold the State to its burden of proof for the firearm charge.

17. Petitioner received ineffective assistance of appellate counsel because his counsel failed to file a motion for reconsideration and failed to notify petitioner of the deadline to file his own motion.

18. The trial court mismanaged the trial, leading to a violation of petitioner's First Amendment free speech protections.

19. The prosecutor engaged in vindictive persecution when it overcharged petitioner.

20. Petitioner's constitutional rights were violated when his trial counsel failed to submit a lesser-included offense instruction, and when trial counsel failed to inform petitioner of his rights under court rule 3.5.

21. Similar to ground 9, the State had insufficient evidence to prove that petitioner intended to commit first-degree assault.

22. Petitioner's rights were violated because there were no racial minorities on his jury.

1    23. Petitioner was unconstitutionally prejudiced when the State failed to disclose statements
2        of one of its witnesses.

## BASIS FOR CUSTODY AND FACTS

Petitioner was convicted of two counts of assault in the first degree, each with a firearm enhancement. He was sentenced to 490 months imprisonment and is currently incarcerated in the Stafford Creek Correction Center. The Washington State Court of Appeals described the facts of petitioner's case as follows:

> On July 2, 2012, Officers Stephen Morrison and Charles Schandel contacted three males in a trailer park as part of a narcotics investigation. One of the men contacted was Bale. The officers requested Bale's identification, but he claimed he was unable to find it. Morrison, fearing for the officers' safety due to Bale's "nervous" demeanor, decided to place wrist restraints on Bale to "detain him [and] frisk him for weapons." Morrison reached for Bale's wrist, but "as soon as [Morrison] went hands on with [Bale], he start[ed] pulling away." Bale then broke free and ran.
>
> The officers pursued Bale, catching up to him and tackling him. When Morrison tackled Bale, Morrison heard a metallic noise, which he later recognized as a pistol being racked. The officers saw Bale gripping a pistol in his right hand. Morrison noticed that the gun's hammer was back, indicating that the gun was cocked. Morrison testified that seeing the cocked gun put him in fear for his life because "there's only one reason to cock a gun . . . and that's to shoot it." The gun would not fire without being cocked, but once cocked, the gun would fire with only slight pressure on the trigger.
>
> Schandel testified that Bale "had a death grip on that gun." Morrison gripped the gun's barrel in an attempt to prevent Bale from shooting. Morrison yelled at Bale to "drop the gun." Instead, Bale turned and began to aim the gun towards Morrison's chest at a distance of a few inches. Morrison had his hands on the gun's slide, meaning that if fired, the gun would "more than likely fire one round and malfunction." Morrison was able to wrest the gun away from Bale's grip. The entire struggle lasted five to ten seconds, and Bale at no time attempted to point the gun away from the officers. Bale said nothing during the struggle. Both officers were in fear of being shot.
>
> Bale got away again and continued to run from the officers who chased him. Finally, Morrison apprehended Bale with the use of a stun gun. Morrison thereafter disabled Bale's gun, which was loaded. Officers also found a nylon ankle holster lying between Morrison's patrol car and the location of the struggle.

> The gun belonged to John Hagenson, who said the gun had "come up missing" around June 26. Hagenson suspected that his stepson Benjamin Roberts had taken the gun because there had been no forced entry into Hagenson's gun safe, and when asked about the weapon, Roberts said, "[H]e could get it back." Hagenson claimed that Roberts and Bale were longtime close friends, and that they had been in contact around the date of Bale's incident with the officers. Hagenson believed that Bale must have known Roberts had stolen the weapon because "they know each other's pasts" and Roberts was not "allowed to have firearms."

Dkt. 17, Ex. 3 at 1-3; *State v. Bale*, No. 44172-1-II, 2014 WL 5147606, at *1-2 (Wash. Ct. App. 2014) (citations to the record omitted).

## PROCEDURAL HISTORY

The State charged petitioner with two counts of assault in the first degree with firearm enhancements for each, and possession of a stolen firearm. Dkt. 17, Ex.1 at 72-74; Ex. 3 at 3. He was found guilty on all counts by a jury. Dkt. 17, Ex.1 at 74; Ex. 3 at 3. The undersigned described petitioner's procedural history in a previous order:

> Petitioner appealed his judgment to the Division II Court of Appeals. Dkt. 17, Exs. 4, 5. The court of appeals upheld his first-degree assault convictions, but reversed his stolen firearm conviction. *Id*., Ex. 3. He petitioned the Washington Supreme Court for review, which denied his request for review. *Id*., Exs. 7, 8. He was ultimately sentenced to a term of 490 months imprisonment. Dkt. 1.
>
> Petitioner then filed a personal restraint petition containing 17 grounds for relief. *Id*., Ex. 10. The Washington Court of Appeals denied his petition. *Id*., Ex. 15. Petitioner did not appeal this decision to the Washington Supreme Court, and the Court of Appeals decision became final on April 20, 2017. *Id*. Ex. 16.
>
> Petitioner now asks this Court to grant him relief through a petition for habeas corpus. Dkt. 4, 4-1.

Dkt. 22 at 2-3.

## STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly

established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

A federal court may grant a habeas petition under two circumstances. Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id*. The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). AEDPA requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). In addition, review of state court decisions under 28 U.S.C. § 2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011).

**EVIDENTIARY HEARING**

The decision to hold a hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Landrigan*, 550 U.S. at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen*, 131 S. Ct. at 1388. A hearing is not required if the allegations would not

entitle petitioner to relief under 28 U.S.C. § 2254(d). *Landrigan,* 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*; *see also Cullen,* 131 S. Ct. 1388 (2011).

Here, petitioner's claims rely on established rules of constitutional law. There are no factual issues that could not have been previously discovered by due diligence. Finally, the facts underlying petitioner's claims are sufficient to establish that a rational fact finder would have found him guilty of the crime. Therefore, the Court concludes that an evidentiary hearing is not necessary to decide this case and petitioner's claims may be resolved on the existing state record.

## DISCUSSION

"[A] state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." *Picard v. Connor*, 404 U.S. 270, 275 (1971). A petitioner's claims are only exhausted after "the state courts [have been given] a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A petition containing both exhausted and unexhausted claims is a "mixed petition." *Rose v. Lundy*, 455 U.S. 509, 522 (1982). Just as federal courts will not entertain an unexhausted claim, federal courts will not hear a mixed petition.

I.  **Exhausted Grounds**

In its previous order, the Court noted that grounds 9, 13, 15, 17, and 21 were properly exhausted. Dkt. 22 at 8. Having again reviewed the record, the Court reiterates its earlier

determination. Petitioner has presented grounds 9, 13, 14, 17, and 21 at every level of state court and allowed the state courts to rule on their merits. Therefore, the Court will analyze these grounds on the merits.

### a. *Sufficiency of the Evidence (Grounds 9, 15, and 21)*

In grounds 9, 15, and 21, petitioner alleges that the State presented insufficient evidence to convict him of assault in the first degree. Dkt. 4-1 at 28-29, 37-39, 47-49. When evaluating a claim of insufficiency of the evidence to support a conviction, the question is not whether the Court itself believes the evidence establishes guilt. "Instead, the relevant question is whether . . . *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also Wright v. West*, 505 U.S. 277, 284 (1992). The Court must "view the record as a whole in the light most favorable to the prosecution." *Gordon v. Duran*, 895 F.2d 610, 612 (9th Cir.), *cert. denied*, 489 U.S. 1077 (1990). The constitutional sufficiency of evidence review is sharply limited. *Wright*, 505 U.S. at 296. The finder of fact is entitled to believe the State's evidence and disbelieve the defense's evidence. *Id*. The Court gives the finder of fact "broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (quoting *Jackson*, 443 U.S. at 319). Further, "[a]n additional layer of deference is added to this standard of review by 28 U.S.C. § 2254(d), which obliges the petitioner . . . to demonstrate that the state court's adjudication entailed an unreasonable application of the *Jackson* standard." *Emery v. Clark*, 604 F.3d 1102, 1111 n.7 (9th Cir. 2010) (citing *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005)).

On direct review, the Court of Appeals analyzed petitioner's sufficiency claims:

[In the State of Washington], first degree assault occurs when a person, "with intent to inflict great bodily harm . . . [a]ssaults another with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death." RCW 9A.36.01 l(l)(a). Intent is present when a person "acts with the objective or purpose to accomplish a result which constitutes a crime." RCW 9A.08.010. "Evidence of intent . . . is to be gathered from all of the circumstances of the case." *State v. Ferreira,* 69 Wash. App. 465, 468 (1993) (quoting *State v. Woo Won Choi,* 55 Wash. App. 895, 906(1989)).

Our inquiry on appeal is whether any rational trier of fact could have found beyond a reasonable doubt that Bale intended to cause great bodily harm. [*State v. Green,* 94 Wash.2d 216, 221–22 (1980) (citing *Jackson*, 442 U.S. at 318)]. Here, viewing the evidence in the light most favorable to the State, a rational trier of fact could have found beyond a reasonable doubt that Bale drew and cocked his weapon with intent to shoot Morrison and Schandel. The officers found an ankle holster along the path where Bale ran from Morrison's patrol car to the site of the struggle, indicating that Bale separated the holster and the gun and discarded only the holster. The officers saw the gun's hammer was pulled back, indicating that it was cocked. Additionally, Bale refused to drop the gun when commanded to do so, pointed the gun at Morrison's chest at a close range, and pushed against Morrison's attempts to point the gun away.

Regarding Bale's argument that he had an opportunity to shoot and did not take it, firing a weapon given an opportunity is neither an element of first degree assault nor part of the definition of intent.[1] *See* RCW 9A.36.011; RCW 9A.08.010. In addition, the evidence, viewed in the light most favorable to the State, proves that Bale did not have an opportunity to fire the gun.

Courts have upheld first degree assault convictions on facts similar to these. For example, in *State v. Anderson,* Division One of this court held that sufficient evidence existed to show that the defendant intended to inflict great bodily harm where the defendant "began a vigorous and prolonged attempt to take [the victim's] weapon by force . . . . [The defendant] used both hands to push the weapon toward [the victim's] head." 72 Wash. App. 453, 459 (1994). The facts in *Anderson* are comparable to the facts here: the defendant did not fire the weapon, and yet the court determined that sufficient evidence of intent to cause great bodily harm existed because the defendant continued to struggle with the victim and point the

---

[1] Bale points us to where the testimonies of the two officers conflict: Morrison testified that "Bale had the opportunity to shoot [Morrison] but did not do so," whereas Schandel testified that "Bale never had the ability to shoot because the officers jumped him and grabbed the gun and kept it pointed away from themselves." Br. of Appellant at 4. We resolve this discrepancy in favor of the State. We "must defer to the trier of fact on issues involving conflicting testimony, credibility of the witnesses, and the persuasiveness of the evidence." *State v. Hernandez,* 85 Wash. App. 672, 675, 935 P.2d 623 (1997). [Footnote by Court of Appeals].

> weapon at him. 72 Wash. App. at 459. There is no requirement that a weapon be fired before a jury can find intent to cause great bodily harm.
>
> Regarding Bale's argument that he did not verbally communicate his intent to cause great bodily harm, verbal communication of a threat is not a required element of first degree assault, nor part of the definition of intent. *See* RCW 9A.36.011; RCW 9A.08.010. The State was required to prove that Bale had the object or purpose to commit great bodily harm, not that he communicated his desire to do so. RCW 9A.08.010. Viewing the evidence in the light most favorable to the State, there was sufficient evidence to support the jury's finding of intent through Bale's physical actions of removing the gun from its holster, cocking it, pointing it at the officers, and struggling against attempts to push the gun away.

Dkt. 17, Ex. 3 at 4; *Bale*, 2014 WL 5147606 at *2-3 (parallel citations omitted).

Petitioner argues in grounds 9 and 21 that the State failed to prove he had intent to assault the officers. Dkt. 4-1 at 28-29, 47-49. He states that his actions only amount to assault in the third degree or resisting arrest (*Id*. at 28-29), or that the State failed to show intent to cause great bodily harm rather than simply frighten the officers (*Id*. at 47-49). However, the record contains sufficient evidence for a rational trier of fact to conclude that petitioner intended to cause great bodily harm to the officers. When the officers tackled petitioner, he was holding a firearm. Dkt. 26, Ex.17 at 72. Both officers testified that the hammer of the gun was cocked, indicating it was ready to fire. *Id*. at 74; Ex. 18 at 151. During the altercation, petitioner did not surrender the weapon or stop when commanded. *Id*., Ex. 17 at 132; Ex. 18 at 158. The officers also testified that petitioner was attempting to aim the gun at one officer, and that both officers feared that the gun would discharge and harm them. *Id*., Ex. 17 at 75-78; Ex. 18 at 168. As the Court of Appeals noted, under Washington law, a defendant need not speak his intent in order for a jury to reasonably infer intent. *Bale*, 2014 WL 5147606, at *3. Rather, the act of pointing a firearm at a person can be sufficient. *Id*. Viewing the evidence in the light most favorable to the State, the State provided sufficient evidence for a reasonable person to conclude beyond a reasonable doubt that petitioner intended to inflict great bodily harm on the officers. The Court of Appeals

properly applied the correct federal standard when it came to this conclusion, and therefore did not make a ruling that was contrary to or an unreasonable application of clearly established federal law.

Petitioner also argues in ground 15 that the State failed to prove he committed the act of assault against the officers. Dkt. 4-1 at 37-39. He claims that, because he never discharged the firearm or struck the officers, no rational trier of fact could conclude he physically "assaulted" them. *Id*. However, the record contains sufficient evidence for a rational trier of fact to conclude beyond a reasonable doubt that petitioner committed the act of assault. As the Court of Appeals noted, first degree assaults occurs when a person "[a]ssaults another with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death." *Bale*, 2014 WL 5147606, at *2 (quoting RCW 9A.36.011(1)(a)). The record indicates that, during the struggle, petitioner was struggling with the officers while attempting to point the firearm at them. *See* Dkt. 26, Ex. 17 at 72-78; Ex. 18 at 58-68. Resisting two police officers while attempting to point a gun at them could be reasonably interpreted as a force or means that would likely produce great bodily harm. Viewing the evidence in the light most favorable to the State, the State provided sufficient evidence for a reasonable finder of fact to conclude beyond a reasonable doubt that petitioner committed the act of assault, and the Court of Appeals did not unreasonably apply clearly established federal law when it came to that conclusion. Therefore, the Court recommends denying petitioner's habeas petition on grounds 9, 15, and 21.

    ***b. Appellate Error (Ground 13)***

In ground 13, petitioner argues that the Washington Court of Appeals failed to conduct a harmless error analysis when it reversed his firearms conviction. Dkt. 4-1, 33-35. As noted above, a habeas petition will only be granted against a state court decision if that decision was

contrary to or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d). Petitioner argues that the Court of Appeals improperly failed to engage in a "harmless error" analysis when reversing his firearms conviction. Dkt. 4-1 at 33-34. Neither party has provided, nor has the Court identified, any Supreme Court precedent requiring a state court to engage in a harmless error analysis in this situation. Because the Supreme Court has not produced a holding governing this circumstance, there is no clearly established federal rule that the state court could violate, and its decision was not contrary to nor an unreasonable application of clearly established federal law. Therefore, the Court recommends that petitioner's habeas petition be denied on ground 13 as well.

### c. *Ineffective Assistance of Appellate Counsel (Ground 17)*

Finally, in ground 17, petitioner alleges that he received ineffective assistance of appellate counsel. The primary question when reviewing a claim of ineffective assistance of counsel under AEDPA is not whether counsel's representation was deficient, or whether the state court erred in analyzing the claim, but whether the state court adjudication of the claim was unreasonable. *Landrigan*, 550 U.S. at 472-473. Because counsel has wide latitude in deciding how best to represent a client, review of counsel's representation is highly deferential and is "doubly deferential when it is conducted through the lens of federal habeas." *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003).

Under the Due Process Clause of the Fourteenth Amendment, criminal defendants are entitled to the assistance of counsel on criminal appeals as of right. *Douglas v. California*, 372 U.S. 353 (1963). The due process right to appellate counsel also includes the right to the effective assistance of appellate counsel. *Evitts v. Lucey,* 469 U.S. 387, 397 (1985). The proper standard for evaluating petitioner's claim that appellate counsel was ineffective is enunciated in

*Strickland v. Washington*, 466 U.S. 668 (1984). *See Smith v. Murray,* 477 U.S. 527, 535-536 (1986) (applying *Strickland* to a claim of attorney error on appeal). Petitioner must show that (1) his counsel's actions on appeal were objectively unreasonable, and (2) there is reasonable probability that, but for counsel's actions, petitioner would have prevailed on his appeal. *See Strickland,* 466 U.S. at 687-91; *Smith v. Robbins,* 528 U.S. 259, 285-86 (2000).

Petitioner alleges that his appellate counsel was ineffective because he failed to file a motion for reconsideration at the Court of Appeals, failed to inform petitioner that he would not file a motion for reconsideration, and failed to inform petitioner of the deadline for filing the motion himself. Dkt. 4-1 at 40-42. However, petitioner has not pled facts to demonstrate that counsel's actions were objectively unreasonable. Counsel had already raised several of petitioner's arguable grounds on direct appeal. Failing to file a motion for reconsideration is not the same as neglecting to raise favorable arguments and the choice not to file a motion for reconsideration was not objectively unreasonable under the circumstances. Further, petitioner does not demonstrate how failing to file the motion prejudiced him. Based on the Court of Appeals' analysis of his claims, there was not a reasonable probability that the court would have come to a different result if they granted the motion for reconsideration. *Robbins,* 528 U.S. at 285-86. Because of this, petitioner has shown neither that his appellate counsel acted unreasonably, nor that counsel's actions prejudiced his case. Therefore, the Court recommends denying petitioner's habeas petition as to ground 17.

**II.      Ground For Which State Court Has Granted Relief (Ground 16)**

As the Court noted in its previous order, the Court of Appeals has already granted relief for one of petitioner's claims. Dkt. 22 at 4. Ground 16 alleges that petitioner's trial counsel was ineffective for failing to hold the State to its burden of proof on the possession of a stolen firearm

charge. Dkt. 4-1 at 39-40. The Court of Appeals dismissed the firearms charge for insufficient evidence during direct appeal. Dkt. 17, Ex. 3 at 7-8. Because the charge was dismissed, the effectiveness of trial counsel with respect to this charge is moot. Therefore, the Court recommends denial on this ground and it will not analyze it on its merits.

### III. Unexhausted Grounds

Petitioner has not exhausted his state remedies with regard to his remaining 17 claims. The Court analyzed petitioner's unexhausted claims in its previous order directing additional briefing and recommended that these claims be dismissed with prejudice:

> Petitioner has not properly exhausted his remaining claims. He asserts 23 grounds for relief before this Court. Dkt. 4-1. After the Washington Supreme Court denied review of his direct appeal, he filed a timely personal restraint petition containing 17 of these grounds. Dkt. 17, Ex. 10. Petitioner had not presented five of these grounds on direct appeal. The state court of appeals denied relief. Dkt. 17, Ex. 15. However, petitioner did not file a petition for review with the Washington State Supreme Court and the state court of appeals issued its mandate on April 20, 2017. *Id.*, Ex. 16. As noted above, grounds 9, 13, 15, 17, and 21 were properly exhausted and petitioner was granted relief on ground 16 at the state court of appeals. However, petitioner did not allow the Washington Supreme Court a full opportunity to review the remaining 17 claims. *O'Sullivan*, 526 U.S. at 845. These claims are unexhausted, and this Court will not review unexhausted claims. *Picard*, 404 U.S. at 275.
>
> In addition, petitioner's unexhausted claims are procedurally defaulted. Procedural default is distinct from exhaustion in the habeas context. *Id.* at 1230. The procedural default rule bars consideration of a federal claim by a federal court when it is clear that the state court has been presented with the federal claim but declined to reach the issue for procedural reasons or it is clear that the state court would hold the claim procedurally barred. *Id.* at 1230-31 (citations omitted). If a state procedural rule would now preclude petitioner from raising his claim at the state level, the claim is considered "procedurally defaulted" and the federal courts are barred from reviewing the claim on the merits. *Boerckel*, 526 U.S. at 845; *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). This Court will only hear the merits of a procedurally defaulted claim if the petitioner can show "cause for the default and prejudice from a violation of federal law." *Martinez v. Ryan*, 566 U.S. 1, 10 (2012) (citing *Coleman*, 501 U.S. at 750). A petitioner can show cause by demonstrating that "some objective factor external to the defense impeded [petitioner]'s efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

> Here, though he filed a personal restraint petition with the court of appeals, petitioner neglected to do so with the state supreme court. As noted above, this did not give the state courts a full opportunity to review petitioner's case for legal error. Petitioner's judgment and sentence became final in 2015. Petitioner neglected to appeal the court of appeals' decision within 30 days. Dkt. 17, Ex. 9; RAP 13.5, 13.5A. In Washington, a petitioner can only file a personal restraint petition within one year of sentence finalization. RCW 10.73.090. Because he did not exhaust his remedies with his initial personal restraint petition and the one-year statute of limitations has expired for a second petition, petitioner can no longer present his remaining claims to the Washington Supreme Court. Petitioner's remaining claims are procedurally barred under state law and he is now unable to fully exhaust them. Petition has not demonstrated that some objective factor impeded his efforts to comply with state procedure and appeal to the state supreme court. Federal courts will not hear such procedurally barred claims on their merits absent a showing of cause and prejudice stemming from a violation of federal law. *Martinez*, 566 U.S. at 10. Because of this, his remaining claims are procedurally barred.
>
> Because of this procedural bar, the remedies normally associated with a mixed petition are inappropriate. The Court will normally dismiss a mixed petition containing both exhausted and unexhausted claims without prejudice. *Rose*, 455 U.S. at, 522. Alternately, the Court can stay the petition "while the petitioner returns to state court to exhaust his previously unexhausted claims." *Rhines v. Weber*, 544 U.S. 269, 275-76 (2005). However, the Court only considers these remedies when a state court has not yet had the opportunity to examine a petitioner's claims. *Franklin v. Johnson*, 190 F.3d 1223, 1231 (9th Cir. 2002). When a petitioner's claims are unexhausted, procedurally barred in state court, and he cannot show cause and prejudice for failing to exhaust his remedies, "the district court dismisses the petition because the petitioner has no further recourse in state court." *Id.*
>
> Respondent requests that the Court dismiss the petition without prejudice. However, dismissing the petition without prejudice is futile because petitioner no longer has the option of exhausting his claims in state court before returning to federal court. *See id.* For the same reason, staying the proceeding would serve no purpose. Accordingly, in the interest of judicial economy, this Court declines to dismiss the petition or stay the proceeding and instead recommends that those unexhausted claims be dismissed with prejudice and that those exhausted claims move forward on the merits.

Dkt. 22 at 5-7.

Having again reviewed the record, the Court reiterates its previous recommendation. For the reasons set forth above, petitioner's unexhausted and procedurally defaulted claims should be dismissed with prejudice.

## CERTIFICATE OF APPEALABILITY

Petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A certificate of appealability may issue only if petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Pursuant to this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to this petition.

## CONCLUSION

Petitioner has properly exhausted five grounds, and has already received relief on one other ground. His remaining grounds are unexhausted and procedurally defaulted. Therefore, the Court recommends that petitioner's unexhausted claims be dismissed with prejudice. Ground 16, for which he has already received relief, should be denied as moot. Finally, the Court recommends that the District Court deny petitioner's habeas petition on his five exhausted grounds because he has not demonstrated that the state courts' rulings were contrary to or unreasonable applications of clearly established federal law.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver

of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on November 24, 2017, as noted in the caption.

Dated this 2nd day of November, 2017.

J. Richard Creatura
United States Magistrate Judge